■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY FORD, Appellant.—Judgment, Supreme Court, New

York County (Edward McLaughlin, J., at trial; Herman Cahn, J., at hearing), rendered October 21, 1987, convicting defendant, after a jury trial, of grand larceny in the fourth degree (Penal Law § 155.30), for which he was sentenced as a predicate felony offender to a term of incarceration of 1½ to 3 years, unanimously affirmed.

Defendant and two others accosted two teen-age males and took a radio and headphones from one of them during the early morning hours of January 10, 1987 in the Times Square area. Defendant and one accomplice were apprehended by police, upon the victims' visual identification, at Port Authority Terminal, within 20 minutes of the crime. Defendant and his codefendant made inculpatory statements when apprehended. Evidence of guilt was overwhelming.

The court's *Sandoval* ruling *(People v Sandoval,* 34 NY2d 371) was not an abuse of discretion. The court expressly balanced the probative worth of defendant's prior convictions and the potential for undue prejudice *(supra,* at 375). It cannot be said that the ruling of the court to permit questions (if defendant took the stand) concerning one prior felony conviction for an eight-year-old robbery, and only the number of prior misdemeanors (four), precluding the penal designations and facts thereof, precluding any evidence of other prior arrests and violations, and precluding evidence as to a pending grand larceny charge, unduly prejudiced defendant or prevented him from taking the stand. This evidence reflected defendant's willingness to place his interests above those of society *(supra,* at 377). The fact that the prior felony was theft related, and that the prosecutor would have been permitted to inquire into its nature, does not persuade us that the defendant thereby suffered undue prejudice. We have noted that "the fact that a defendant may specialize in one type of illegal activity * * * does not *ipso facto* shield such defendant from having prior convictions used to impeach his credibility." *(People v Rahman,* 62 AD2d 968, *affd* 46 NY2d 882.)

With respect to the court's supplemental instruction, provided when the jury indicated possible deadlock after four hours of deliberation, we find neither coercive language nor coercive effect. When counsel objected on the basis that the court had not advised each juror to hold to his or her opinion, the court indicated its expectation that it would receive future such notes, and would provide more amplified instructions at that time. While it would have been preferable to instruct the jury along the lines that the "verdict must be the verdict of

each individual juror, and not a mere acquiescence in the conclusion of his fellows" *(Allen v United States,* 164 US 492, 501), the instruction was devoid of coercive phrasing, and did not have a coercive effect. We note that two more hours elapsed before a verdict and that the defendants were acquitted on the robbery in the second degree counts.

Defendant's challenge to the court's delegation to the court officer of the task of informing the jury that they shortly would be taken to dinner and sequestered, as a purported violation of defendant's right to be present at all material stages of the proceeding, is unpreserved for our review as a matter of law (CPL 470.05 [2]; *People v Morman,* 137 AD2d 838, *lv. denied* 71 NY2d 900). We decline to review in the interest of justice. If we were to review, we would note that the court officer had performed only a ministerial act, which was not to be equated with a material stage of the proceeding *(see, People v Mullen,* 44 NY2d 1, 5; *cf., People v Ciaccio,* 47 NY2d 431, 436), and furthermore, nothing in the record persuades us that this conduct evinced coerciveness. Concur—Kupferman, J. P., Asch, Wallach, Smith and Rubin, JJ.